IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|   |   |   |
|---|---|---|
| GARY MANGINI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. 11-270-NLH-KMW |
| | : | |
| PENSKE LOGISTICS, | : | *Hon. Noel L. Hillman* |
| | : | |
| Defendant. | : | |

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Respectfully Submitted,

**FLASTER/GREENBERG P.C.**

Dated:   December 9, 2011

/s/ *Michael D. Homans*
Michael D. Homans (MH8447)
Rachel E. Licausi (RK1470)
FLASTER/GREENBERG P.C.
1810 Chapel Avenue West
Cherry Hill, New Jersey
08002-4609
Phone:   (856) 382-2217
Attorneys for Defendant

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS ............................................... i

TABLE OF AUTHORITIES ............................................ ii

INTRODUCTION ................................................... 1

STANDARD OF REVIEW ............................................. 4

LEGAL ARGUMENT ................................................. 5

I.   The Framework for Analyzing CEPA Claims. ................. 5

II.  Summary Judgment Should be Granted Because Mangini
     Cannot Establish A Prima Facie Case Under CEPA. .......... 7

     A.   Mangini Did Not Have an Objectively Reasonable
          Belief that Penske's Conduct Violated a Law. ........ 7

          1.   Plaintiff must show a "substantial nexus"
               between complained of conduct and law. ......... 7

          2.   CEPA claims cannot be based on higher
               personal standards. ............................ 8

          3.   Plaintiff's asserted belief in a legal
               violation must have reasonable basis in
               fact. ......................................... 10

          4.   Private disagreement over an employer's
               decision or policy does not establish a CEPA
               violation. .................................... 11

          5.   Mangini cannot establish objectively
               reasonable belief as to a violation of the
               law. .......................................... 11

     B.   Mangini Did Not Perform a "Whistle-blowing"
          Activity Described in N.J.S.A. § 34:19-3c .......... 19

     C.   Mangini Cannot Establish A Causal Connection
          Between Any "Whistle-blowing" and His Dismissal. ... 22

III. Summary Judgment Should be Granted Because Mangini
     Cannot Establish that Penske's Explanation for His
     Termination Was False and Pretextual .................... 25

CONCLUSION .................................................... 31

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

Allia v. Target Corp.,
  2008 WL 1732964 (D.N.J. April 10, 2008)...................6, 8

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).........................................4

Blackburn v. UPS, Inc.,
  179 F. 3d 81 (3d Cir. 1999)............................passim

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986).........................................4

Flear v. Glacier Garlock Bearings,
  159 Fed. Appx. 390 (3d Cir. 2005)......................passim

Fuentes v. Perskie,
  32 F.3d 759 (3d Cir. 1994).................................26

Marracco v. Kuder,
  2008 WL 4192064 (D.N.J. Sept. 9, 2008)................5, 6, 7

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
  475 U.S. 574 (1986).........................................4

Zaffuto v. Wal-Mart Stores, Inc.,
  130 Fed. Appx. 566 (3d Cir. 2005)......................26, 28

**STATE CASES**

Colon v. Prudential Ins. Co. of Am.,
  2006 WL 507732 (App. Div. March 3, 2006)...........11, 15, 19

Demas v. National Westminster Bank,
  313 N.J. Super. 47 (App. Div. 1998).......................15

Dzwonar v. McDevitt,
  177 N.J. 451 (N.J. 2003)...............................passim

Eddy v. State of New Jersey,
  2008 WL 5118401 (App. Div. 2008)....................9, 14, 21

Klein v. Univ. of Med. and Dentistry of New Jersey,
    377 N.J. Super 28 (App. Div. 2005)......................passim

Lau v. Plymouth Environmental, Inc.,
    2007 WL 4563510 (App. Div. December 31, 2007).....5, 8, 13, 15

Massarano v. New Jersey Transit,
    400 N.J. Super. 474 (App. Div. 2008)................7, 13, 25

Maw v. Advanced Clinical Communications, Inc.,
    179 N.J. 439 (N.J. 2004)..............................11, 12

Young v. Schering Corp.,
    275 N.J. Super. 221 (App. Div. 1994), aff'd, 141 N.J. 16
    (1995)................................................14, 19

Zappasodi v. New Jersey,
    335 N.J. Super. 83 (App. Div. 2000)......................25

**STATE STATUTES**

N.J.S.A. § 34:19-1 et seq. ..................................1, 5

N.J.S.A. § 34:19-3 .............................................6

N.J.S.A. § 34:19-3c ...............................2, 6, 19, 20

**RULES**

Fed. R. Civ. P. 56(a) .........................................4

**REGULATIONS**

49 C.F.R. §393.102(c)(2) (2011) ..............................17

49 C.F.R. §393.104 (2011) ....................................17

49 C.F.R. §393.106 (2011) ....................................17

## INTRODUCTION

Plaintiff Gary Mangini ("Mangini" or "Plaintiff") brings a one-count Complaint under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. §34:19-1 et seq.  Mangini, a former truck driver for defendant, Penske Logistics LLC ("Penske"), alleges in his Complaint that Penske terminated his employment because he "blew the whistle" on alleged unlawful activities regarding the strapping of product, in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"). This allegation is completely baseless, as set forth below, and therefore Mangini's CEPA claim must fail.

Mangini cannot establish three of the four elements needed for a prima facie case under CEPA.  First, Mangini's CEPA claim fails because he cannot demonstrate that he had an objectively reasonable belief that Penske was violating a law, rule, regulation or a clear mandate of public policy on September 25, 2010, when he complained to management about his fear of personal injury from loading and unloading baked goods that were to be delivered to his route on the Jersey Shore.  Indeed, Mangini's own testimony confirms that he does not know if delivering the load was against the law, but rather that his "personal preference" was not to do it because he feared the amount of loading and unloading involved might cause him to hurt

himself. His fear was not rooted in any law, and Mangini has not been able to articulate anything other than his individual risk threshold and a difference of opinion with management.  Mangini never identified any law that would allow a driver to refuse work based on a fear of personal injury, no doubt because such a law does not exist.

Second, Mangini's CEPA claim fails because he did not perform any "whistle-blowing" activity described in N.J.S.A. §34:19-3c on September 25, 2010, having never mentioned that Penske's conduct violated any law or policy on the day he was suspended or in his written statement to Penske Human Resources. He vaguely referenced Penske training about "federal regulations," but is admittedly unable to tie this allegation to any actual law establishing that a driver has the ability to refuse any work that the driver personally feels is unsafe. Moreover, his belated attempt in his complaint about unsafe "strapping," and his citation to inapplicable federal regulations regarding securing loads in trucks, must be rejected as he admittedly never raised or suggested any claim about strapping or securing the load prior to his termination.

Third, Mangini cannot establish a causal connection between any alleged protected activity and his termination.  As demonstrated above, Mangini did not engage in any whistle-blowing activity protected under CEPA and therefore cannot

establish a causal connection to his termination.  All evidence regarding the actual decision-making process supports the fact that Mangini was terminated for violating a basic standard of conduct at Penske, "Refusal to Dispatch," an offense that results in immediate termination.

Finally, Mangini cannot establish that Penske's explanation for his termination was a pretext for unlawful retaliation. Penske had a legitimate reason for Mangini's discharge, his violation of a basic standard of conduct at Penske, "Refusal to Dispatch," which is consistently applied to require termination of any employee who refuses to accept his assigned route. Mangini was insubordinate and management warned him, discussed and memorialized his refusal to dispatch, and then terminated him.  Two independent reviewers – fellow drivers and the New Jersey Department of Labor and Workforce Development Unemployment Compensation Appeal Tribunal, the entity that reviewed Mangini's unemployment claim -- have affirmed the legitimacy of Penske's decision.  Mangini has not presented any witness or document to challenge Penske's stated legitimate reason for termination, or otherwise support his pretext claim.

## STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  A factual dispute is material only if it "might affect the outcome of the suit under governing law." <u>Id.</u> at 248.

Importantly, the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. <u>Id.</u>  If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

4

**LEGAL ARGUMENT**

### I.    The Framework for Analyzing CEPA Claims.

Mangini brought his single-count complaint under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. §34:19-1 et seq. "CEPA was enacted to prevent retaliatory action by an employer against an employee who 'blows the whistle on illegal or unethical activity' ... not to ... settle internal disputes at the workplace." Klein v. Univ. of Med. and Dentistry of New Jersey, 377 N.J. Super 28, 45 (App. Div. 2005). See also Marracco v. Kuder, 2008 WL 4192064 *6-7 (D.N.J. Sept. 9, 2008) (J. Hillman); Dzwonar v. McDevitt, 177 N.J. 451, 461 (N.J. 2003); Lau v. Plymouth Environmental, Inc., 2007 WL 4563510 * 4 (App. Div. December 31, 2007).

CEPA provides:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer… that the employee reasonably believes… is in violation of a law, or a rule or regulation promulgated pursuant to law…; or…
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law…;
>
> (2) is fraudulent or criminal . . . or

> (3) is incompatible with a clear mandate of
> public policy concerning the public health,
> safety or welfare or protection of the
> environment.

N.J.S.A. §34:19-3 (West).

The analysis of a retaliatory discharge claim under CEPA mirrors that of a retaliation claim under federal discrimination law. Blackburn v. UPS, Inc., 179 F. 3d 81, 92 (3d Cir. 1999). The plaintiff must initially establish a prima facie case by proving that: (1) he reasonably believed that his employer's conduct violated a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he engaged in a "whistle-blowing" activity described in N.J.S.A. §34:19-3c; (3) a retaliatory or adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Id.; see also Marracco, 2008 WL 4192064 *6-7 (citing Dzwonar, 177 N.J. at 462); Allia v. Target Corp., 2008 WL 1732964 *4 (D.N.J. April 10, 2008) (J. Hillman).

If the plaintiff presents sufficient factual evidence to establish a prima facie case, then the burden shifts to the defendant to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for the adverse employment action. Blackburn, 179 F. 3d at 92. If the defendant does so, the burden shifts back to the plaintiff to

prove that the employer's proffered reasons are pretextual.   Id.
Where a plaintiff fails to present admissible factual evidence
showing that defendant's legitimate nonretaliatory reason is
pretextual, the plaintiff's CEPA claim should be dismissed.
Flear v. Glacier Garlock Bearings, 159 Fed. Appx. 390, 393 (3d
Cir. 2005).

**II.     Summary Judgment Should be Granted Because Mangini
         Cannot Establish A Prima Facie Case Under CEPA.**

      **A.   Mangini Did Not Have an Objectively Reasonable
         Belief that Penske's Conduct Violated a Law.**

Mangini cannot meet the first element of a prima facie CEPA
case – demonstrating that he had an objectively reasonable
belief that Penske was violating a law, rule, regulation or a
clear mandate of public policy.

      **1.   Plaintiff must show a "substantial nexus"
         between complained of conduct and law.**

To begin with, to establish an objectively reasonable
belief, a plaintiff cannot rest on simply alleging that he
subjectively believed the conduct was "wrong" or "unsafe" or
unlawful, or even that he has cited some law or regulation.
Rather, he or she "must identify a statute, regulation, rule, or
public policy that **closely relates** to the complained-of
conduct." Marracco, 2008 WL 4192064 *6-7 (emphasis added); see
also Massarano v. New Jersey Transit, 400 N.J. Super. 474, 487
(App. Div. 2008). If the plaintiff fails to identify a law that
he or she reasonably believed was being violated by the

employer, then the court must dismiss the action.  See, e.g.,
Allia, 2010 WL 1050043 *9-10 (granting Target Corporation's
motion for summary judgment where the plaintiff claimed that she
was terminated because she pointed out to the company's
attorneys that notes of a manager were incorrect, but could not
articulate how Target violated any law or otherwise acted
contrary to the purposes of CEPA).

Of critical importance, the plaintiff must show there is a
"substantial nexus" between the complained of conduct and the
law relied upon.  Dzwonar, 177 N.J. at 464; Lau, 2007 WL 4563510
* 4 (App. Div. December 31, 2007) (plaintiff's CEPA claim
dismissed on summary judgment where there was no connection
between cited laws and defendant's conduct).  The mere
identification of a statute does not satisfy the first prong of
a CEPA claim if it lacks a close relationship with plaintiff's
claims.  Lau, 2007 WL 4563510 at * 6; see also Dzwonar, supra,
117 N.J. at 465-68.

### 2.    CEPA claims cannot be based on higher personal standards.

As a matter of law, CEPA claims cannot be based on
objections to an employer's failure to meet standards that
differ from or are higher than those imposed by law.  Flear, 159
Fed. Appx. at 392.  In Flear, an environmental and safety
engineer complained to OSHA regarding his concerns over

particular compliance issues involving the employer.  The plaintiff's complaints were based on his own personal safety standards, and his "view of best practices," which were over and above anything required by law, and he did not establish any actual violations of the law or OSHA regulations.  Id.  Accordingly, the court ruled that he could not establish an objectively reasonable belief that the employer was violating the law, as required by the first prong of a CEPA prima facie case.  Id.

Likewise, in Klein, the plaintiff-doctor refused to perform a radiology assignment until the hospital instituted changes to alleviate the plaintiff's concerns for his patients' care. 377 N.J. Super at 35.  The appellate division affirmed the trial court's grant of summary judgment for the employer because the record was "devoid of any evidence, nor [did] plaintiff even allege, any state or federal regulatory violations committed by [defendant]." Id. at 44.  The court characterized the case as a private dispute about internal business procedures and priorities, as opposed to a whistle-blowing activity, because the trial court could not find a rule, regulation or public policy that was violated, and found that "judgment for a defendant is appropriate where no such law or policy is forthcoming." Id. at 40, 44; see also Eddy v. State of New Jersey, 2008 WL 5118401 (App. Div. 2008) (CEPA claim dismissed

9

where plaintiff complained about his alleged public safety
concerns relating to police officer manpower restrictions on
overtime and allocation of resources because those decisions
were both lawful and within the province of management of a
large organization such as the State Police); Dzwonar, 177 N.J.
at 463 (similar).

### 3. Plaintiff's asserted belief in a legal violation must have reasonable basis in fact.

An employee also must show that his belief that illegal
conduct was occurring had an objectively reasonable basis in
fact. Dzwonar, 177 N.J. at 464-5.  On this point, the Third
Circuit has noted that an employee must possess sufficient
knowledge about which he complains, through education,
experience, or investigation, for his belief of illegality to be
deemed objectively reasonable. See Blackburn, 179 F.3d at 94
n.4. In Blackburn, the court rejected plaintiff's bald claim of
"predatory pricing" as a basis for a CEPA claim where the record
revealed he lacked an objectively reasonable basis for alleging
a legal violation.  The court explained that the plaintiff's
allegations "regarding one of the most complex and difficult-to-
prove areas of anti-trust law – predatory pricing – are
undermined by his patent lack of sophistication in this area . .
. .  Despite being liberally construed by the New Jersey courts,
CEPA is not intended to shelter every alarmist who disrupts his

10

employer's operations by constantly declaring that illegal
activity is afoot - or, as in this case, is about to be afoot."
<u>Id.</u>

### 4. Private disagreement over an employer's decision or policy does not establish a CEPA violation.

Simply disagreeing with an employer's policy or job action
does not establish a CEPA violation.  <u>Colon v. Prudential Ins.
Co. of Am.</u>, 2006 WL 507732 (App. Div. March 3, 2006) (affirming
summary judgment because plaintiff failed to demonstrate an
objectively reasonable belief that employer had violated any
law; plaintiff's objection was simply disagreement with
employer's vendor selection policy).

Moreover, if an employee's complaint relates to activity
that does not have public ramifications, but is more in the
nature of a private disagreement about the employee's own
situation, then it is not protected by CEPA.  <u>See Maw v.
Advanced Clinical Communications, Inc.</u>, 179 N.J. 439, 445 (N.J.
2004) (dispute over employer's non-compete provision did not
amount to a viable CEPA claim but rather a private dispute).

### 5. Mangini cannot establish objectively reasonable belief as to a violation of the law.

Applying these standards to Gary Mangini's case, the
undisputed evidence shows that he did not have an objectively

reasonable belief that Penske was engaged in any unlawful conduct, as required under CEPA.

First, Mangini admits that his concern and complaint was that the heavy load would make him have to do extra work to move product around from the center aisle, which could cause him to strain his back or otherwise injure himself: "I wasn't going to work in an unsafe manor (sic) where I could possible (sic) hurt myself." Mangini Statement at Penske-0143, Ex. 14.[1] See also Statement of Undisputed Facts ¶¶27-31, 37. Mangini explained that he feared he could hurt himself by having to move product in and out of the center aisle to make the deliveries at each stop, which would increase the risk that he could hurt himself, pull his back, or strain a muscle. Mangini testified that the sole reason he refused to take the load was concern about possible personal injury to himself, "so that's a possible concern for me hurting myself, pulling my back, straining." Mangini Dep. at 112:15-113:7, Ex. 2. Such a personal concern about one's own potential injury – and not a legal violation or threat to the public interest – is not protected by CEPA. See Maw v. Advanced Clinical Communications, Inc., 179 N.J. 439, 445 (N.J. 2004) (holding that if an employee's complaint relates to activity that does not have public ramifications, but is more in

---

[1] All exhibit number references are to the exhibits attached to the Certification of Rachel E. Licausi, Esq. filed herewith.

the nature of a private disagreement about the employee's own situation, then it is not protected by CEPA).

Second, Mangini admits that his refusal to take the load was based on his own "personal preference" and individual standards as to risk of injury, and that another driver could have done the job without breaking the law.  Mangini Dep. at 117:19-118:12, 190:3-23, Ex. 2 (e.g., "I couldn't really tell you if it was against the law or not.")  This admission, by itself, establishes that Mangini lacked an objectively reasonably belief in a violation of the law, and that instead, "the evidence shows that [plaintiff] was basing his complaints on standards that were higher than those imposed by law." Flear, 159 Fed. Appx. at 392.  Like the plaintiff in Massarano, Mangini cited no law concerning his fear of personal injury, nor does one exist.  Massarano, 400 N.J. Super. 474.  Because he cannot establish a substantial nexus between any law and his fear of personal injury, his CEPA claim must be dismissed. Dzwonar, 177 N.J. at 464; Lau, 2007 WL 4563510 * 4 (App. Div. December 31, 2007).

Merely alleging a personal concern that loading and unloading a quantity of baked goods is "unsafe" is not alleging a violation of the law.  New Jersey courts have repeatedly emphasized that an employee expressing concerns as to his or her own safety standards does not qualify as an objectively

13

reasonable belief in a violation of the law under CEPA.  See, e.g., Flear, 159 Fed. Appx. at 392; Klein, 377 N.J. Super at 35-44; Eddy v. State of New Jersey, 2008 WL 5118401 (App. Div. 2008) (these cases are discussed more fully below, at pp. 20-21.

At most, Mangini's objection to loading and driving the truck based on his concern about hurting himself can be characterized as a disagreement with Penske's lawful business decision not to cater to his personal preferences and concerns. Penske duly inquired into his expressed loading and safety concerns and found them to be baseless.  This sort of private dispute about different business approaches is not actionable under CEPA.  See, e.g., Blackburn, 179 F.3d at 94 n.4 ("CEPA is not intended to protect chronic complainers or those who simply disagree with their employer's lawful actions."); see also Dzwonar, 177 N.J. at 464, 468 (concluding that plaintiff's dispute merely concerned disagreement about access to information and adequacy of union's internal procedures, and thus she did not possess objectively reasonable belief in violation of law); Young v. Schering Corp., 275 N.J. Super. 221, 237 (App. Div. 1994) (in case involving employee's criticism of employer's decision to research a drug, stating that CEPA "was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful"), aff'd, 141 N.J. 16 (1995);

Colon, 2006 WL 507732, at * 10 ("When an employee simply disagrees with the lawful practices of his employer he cannot seek protection under the CEPA").

Third, Mangini cannot base his claim on his vague recollection that he thought some mysterious "new federal regulations" gave him the right to "refuse any work" that he deemed unsafe. Mangini Dep. 149:25-150:21, Ex. 2; Mangini Statement at Penske-0144, Ex. 14. Mangini admitted that he does not have any documentation of such "new regulations," id., and he failed to cite in his complaint or produce in discovery any reference to any alleged federal regulation that gives a driver the authority to refuse work that he personally deems unsafe. As the courts have noted repeatedly, a CEPA plaintiff must establish a "substantial nexus" to an actual law or public policy, with an essential aspect of that proof being the identification of the law or policy allegedly violated. Lau, 2007 WL 4563510 *6; Demas v. National Westminster Bank, 313 N.J. Super. 47, 55 (App. Div. 1998) (affirming summary judgment where plaintiff could not cite a law violated). Plaintiff's inability to identify a "new regulation" that gives drivers the right to refuse work they personally deem unsafe dooms his CEPA claim, as a matter of law.

Fourth, Mangini's belated attempt – after he was terminated – to cite federal regulations (Complaint ¶11, Ex. 5) relating to

the strapping and securing of loads does not salvage his CEPA claim.  Plaintiff admits that, in fact, he never expressed any concerns about strapping or securing the product when he was refusing to take the load.  Mangini Dep. 140:10-18, Ex. 2.  Even when he was given time to prepare a complete, detailed written statement of what happened on his last day of work, Mangini failed to describe or suggest any issue as to strapping or securing the load.  Statement of Facts ¶¶58-62.  Instead, he focused on his concern, noted above, that "[he] could hurt [him]self" because he "would have to . . . move product all around" to unload it.  Id.; see also Mangini Statement at Penske-0143-44, Ex. 14.  As such, Plaintiff's concerns lacked any "substantial nexus" to the regulations he cited post-termination relating to the securing and strapping of product, and Plaintiff cannot now attempt to retroactively change the nature of his pre-termination concerns and beliefs.[2]

Moreover, the securing and strapping regulations cited do not apply to lightweight baked goods in a fully contained, metal

_____

[2] This is not the first time Plaintiff has tried to revise history with false statements regarding critical aspects of his employment at Penske.  As noted in the Statement of Facts, ¶7, in 2008 Plaintiff was arrested while driving for Penske, and falsely reported to management that he was arrested for parking tickets.  In fact, he was arrested and charged with illegal drug distribution, and admits that he did in fact have 100 ecstasy pills when first arrested.  Id. Plaintiff also admits he misrepresented this information to avoid being fired by Penske. Id. Penske did not discover this misrepresentation until discovery in this lawsuit.

16

cargo area.[3]  Mangini's failure to even mention strapping or cite

to this regulation until the filing of his complaint – months

after his termination – reflects his lack of knowledge of these

regulations, and their limitations and inapplicability to the

situation he faced.

Also defeating this claim, the record establishes that the

center aisle stacks easily could be secured by straps. Donnelly

Dep. 32:1-33:5, Ex. 10.  Further eroding the legitimacy of this

claim, Mangini testified variously that (1) he securely loaded

all of the product on the date in question; (2) that it was

---

[3] The federal regulations cited by Mangini, 49 C.F.R.
§393.104 (2011) and 49 C.F.R. §393.106 (2011), do not require
the securing of the product at issue in this case.  Section 49
C.F.R. 393.102(c)(2)(2011) makes clear that no specific form of
securement is required if the cargo is "[t]ransported in a sided
vehicle that has walls of adequate strength, such that each
article of cargo within the vehicle is in contact with, or
sufficiently close to a wall or other articles, so that it
cannot shift or tip to the extent that the vehicle's stability
or maneuverability is adversely affected[.]"  As the photographs
of the truck demonstrate, it is indisputable that Penske's truck
was a "sided vehicle" with solid, metal walls.  Plaintiff's
Photographs, Ex. 29; Penske Photographs, Ex. 20.  Moreover, the
baked goods and other products on the truck were, undeniably,
secured on racks, strapped to the walls inside the cargo
compartment, with the exception of the four stacks and one half-
stack of bagels and pretzels in the middle aisle, which were
placed up against the stacked articles on the walls.  These
center stacks could not "shift or tip to the extent that the
vehicle's stability or maneuverability is adversely affected."
The Penske truck at issue has a Gross Vehicle Weight capacity of
more than 60,000 pounds.  Mangini Dep. 119:4-7, Ex. 2.  It is
plainly unreasonable and incredible to claim that four stacks of
bread products in a metal-enclosed middle aisle of the cargo
area could destabilize a 60,000-pound truck, and that has never
been asserted by Mangini in his lawsuit.

possible that on occasion his mind may have slipped and he could have made deliveries with empty crates unstrapped in the center aisle; and/or (3) that as needed he would strap down the product in the center aisle. Mangini Dep. 156:25-157:13, 137:5-21, Ex. 2.  Given this mish-mash of allegations, plaintiff did not have an objectively reasonable basis in fact for his post-termination claim of a legal violation.  Dzwonar, 177 N.J. at 464-5. Moreover, Plaintiff's delay in raising any such claim and the self-contradictory nature of his claims belie any assertion that he reasonably understood federal regulations on strapping, or that they were violated here.  See Blackburn, 179 F.3d at 94 n.4.

Fifth, and finally, allowing Mangini's claim to proceed would have extreme public policy consequences because it would broaden CEPA to such an unreasonable extent that New Jersey employers could no longer control their workforces and require employees to perform difficult or tiring work. Plaintiff is, in effect, asking this Court to expand CEPA to hold that not only does it prohibit retaliation for a reasonable complaint about unlawful conduct, but that from this point forward any New Jersey employee can avoid work by asserting it would violate his or her own personal standards of safety, regardless of whether there is any alleged legal violation.  Such a decision would violate a continuum of New Jersey decisions refusing to allow

18

such an extension of the law. See, e.g., Blackburn, 179 F.3d at 94 n.4; Dzwonar, 177 N.J. at 464, 468; Young v. Schering Corp., 275 N.J. Super. 221, 237 (App. Div. 1994), aff'd, 141 N.J. 16 (1995); Colon, 2006 WL 507732, at * 10 (collectively discussed and explained in further detail above).

As Mangini's fellow driver, George Doughty, and his colleagues realized, such a rule would create a "monster" that would make the workplace unmanageable.  Doughty e-mail of 9/27/10, Ex. 25.  Likewise, the state of New Jersey recognized that the fact that Mangini, like any other employee, "was supposed to follow the instructions of his superior . . ." Unemployment Compensation Appeal Tribunal decision, Ex. 26.

In short, as summarized by the Third Circuit, "CEPA is not intended to protect chronic complainers or those who simply disagree with their employer's lawful actions." Blackburn, 179 F.3d at 94 n.4

## B.   Mangini Did Not Perform a "Whistle-blowing" Activity Described in N.J.S.A. § 34:19-3c.

For many of the same reasons cited above as to Mangini's lack of an objectively reasonable belief in a violation of the law, he also cannot meet the second prong of CEPA because he did not perform any whistle-blowing activity described in N.J.S.A. 34:19-3c.  Mangini admits that on his last day of work – when the issue arose – he never mentioned that Penske's conduct

violated any specific law or regulation, and that he also failed to do so in the several days of investigation prior to his actual termination.   See Statement of Facts ¶¶38-40, 59-60.

To qualify as a "whistleblower" under N.J.S.A §34:19-3c, Mangini must be able to prove, which he cannot, that he objected to, or refused to participate in any activity, policy or practice which he believed was either (1) a violation of a law, rule, or regulation, or (2) was incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.   N.J.S.A §34:19-3c. As Mangini cannot prove either, his CEPA claim must fail.

Mangini admitted repeatedly in his deposition that his decision not to deliver the load that night was based on a "personal preference" as to risk tolerance and whether the load was safe, that he is not sure if it would be against the law for another driver to deliver such a heavy load, and that he was terminated due to a "difference of opinion" – not a violation of the law.   Specifically, Mangini admitted that other drivers have taken heavier loads at Penske, that such conduct was not necessarily unlawful, and that it was his choice not to take the load that day, based on his lower personal tolerance as to safety risks.   Mangini Dep. 117:19-118:12, Ex. 2.   Accordingly, Mangini cannot now contradict these sworn statements, and contend that he believed Penske's actions were unlawful.

Mangini did state repeatedly to Penske that he thought the work requested was "unsafe" – and Penske disagreed with that assessment -- but that is not enough to constitute protected conduct.  In cases directly on point, the state and federal courts of New Jersey have consistently refused to find a CEPA violation where the alleged protected conduct was premised on the plaintiff's personal belief that the objectionable conduct was unsafe – as opposed to violating an actual law.  See, e.g., Flear, 159 Fed. Appx. at 392 (holding that environmental and safety engineer's complaints based on his own personal standards, and "view of best practices" relating to safety, which were over and above anything required by law, did not constitute protected conduct); Klein, 377 N.J. Super at 35-44 (holding that doctor's refusal to perform a radiology assignment until the hospital instituted changes to alleviate the plaintiff's concerns for his patients' care was not protected conduct, as the record was "devoid of any evidence, nor [did] plaintiff even allege, any state or federal regulatory violations committed by [defendant]"); Eddy v. State of New Jersey, 2008 WL 5118401 (App. Div. 2008) (dismissing CEPA claim where plaintiff's complaints about management decisions to limit overtime, even if motivated by his concerns about public safety, amounted to a dispute as to management discretion, and not a violation of the law).

Plaintiff also does not establish protected conduct through his post-termination citation to inapplicable federal regulations as to strapping down loads, as he obviously did not have such objections – generally or specifically -- during his employment, as noted above.[4]  See Statement of Facts ¶¶ 58-62.

Likewise, his unanchored reference to "paperwork on the new federal regulations" (Mangini Statement at Penske-0144, Ex. 14) did not amount to protected conduct, as Mangini admittedly has no such paperwork and is not aware of – and has not cited -- any actual regulation that provides that a "driver has the power to refuse any work" he or she personally deems "unsafe."  Statement of Facts ¶¶ 42-45.  See discussion on this point above, Section II(A)(5); FN3.

### C.   Mangini Cannot Establish A Causal Connection Between Any "Whistle-blowing" and His Dismissal.

Mangini also fails to sustain his burden of demonstrating the requisite causal connection between protected activity and his termination.[5]  To survive summary judgment, a claimant under CEPA must demonstrate that "a causal connection exists between the whistle-blowing activity and the adverse employment action."  Dzwonar, 177 N.J. at 462.

---

[4] Mangini has not produced a single witness to support his allegations in this case.
[5] It is undisputed that Mangini's termination for Refusal to Dispatch constitutes an "adverse employment action" and accordingly, the third prong of CEPA requiring an adverse employment action is not addressed at length herein.

The facts of the case do not support a finding that a causal connection existed because, as noted above, Mangini did not engage in any conduct protected by the law.  Rather, Mangini was terminated because he "refused dispatch" – that is, he refused to do his assigned job because he objected to the "heavy load" and feared that he would hurt himself from all the loading, unloading and moving around of product that would be required to make the assigned deliveries. Statement of Facts ¶¶37, 54-55.

Nowhere in the record is there any indication that anyone at Penske perceived him to be making a claim of a legal violation, or retaliating against him for same.  To the contrary, the claim that Penske was somehow motivated by retaliation for him raising a safety concern is severely undermined by Plaintiff's admission that Penske stressed "safety, safety, safety" throughout his employment, constantly trained him on safe processes, and did not want him to violate the Federal Motor Carrier Safety Act. Id. ¶¶8-9.  Penske managers repeatedly questioned Plaintiff about his safety allegations before terminating him.  Mangini failed to cite any law or clear mandate of public policy, but rather just noted his personal fear that he might be injured if he did the work.

Penske anticipates that Mangini also may argue that he was terminated because of his reference after his suspension to his

23

belief that there was some "paperwork on the new federal regulations" which "said that the driver has the power to refuse any work" that he or she "deem[ed] unsafe." Id. at ¶42. The record, however, establishes that this reference came days after he was suspended with intent to terminate, had no basis in the law, and had no effect on anyone who received it, as it was a baseless claim. Id. at ¶¶58-62.

Finally, Plaintiff obviously cannot establish a "causal connection" between his termination and his after-the-fact citation to federal regulations on strapping. First, Mangini admits that he never raised the issue of product strapping on September 25, 2010 or in his written statement to Human Resources. Mangini Dep. 140:10-18, Ex. 2. (Moreover, his testimony on the point is self-contradictory, as he admits that all his product was secured that day. Id. at 156:25-157:13.) Penske obviously could not have terminated Plaintiff in retaliation for raising a concern about federal regulations on strapping, given that Mangini did not raise the concern until months after his termination. For these reasons, he cannot meet the fourth prong of a CEPA claim.

III.    **Summary Judgment Should be Granted Because Mangini
        Cannot Establish that Penske's Explanation for His
        Termination Was False and Pretextual.**

Finally, summary judgment should be granted because Mangini
cannot establish that his termination for refusal to dispatch
was pretextual.  The "burden shifting analysis under the Law
Against Discrimination (LAD) should be applied to CEPA cases."
Zappasodi v. New Jersey, 335 N.J. Super. 83, 89 (App. Div.
2000); Massarano, 400 N.J. Super at 492.  "[O]nce plaintiff
establishes a prima facie case of retaliatory discharge, the
defendant must then come forward and advance a legitimate reason
for discharging plaintiff." Massarano, 400 N.J. Super at 492.
Klein, 377 N.J. Super. at 38.  The defendant's burden at this
stage is "relatively light: it is satisfied if the defendant
articulates any legitimate reason for the discharge".
Blackburn, 179 F. 3d at 94.

Where a defendant proffers a legitimate, non-retaliatory
reason for the adverse employment action, no CEPA liability will
be found unless the employee proves the stated reason to be
pretextual.  Massarano, 400 N.J. Super at 492 (affirming summary
judgment where defendant demonstrated that plaintiff's demeanor
was "obstructionist" and "insubordinate" and justified her
termination).

If the defendant proffers such a reason, "plaintiff must
then raise a genuine issue of material fact that the employer's

proffered explanation is pretextual." Klein, supra, 377 N.J.
Super. at 39. At the pretext stage of the analysis for summary
judgment purposes, "the court must determine whether the
plaintiff has offered sufficient evidence for a reasonable jury
to find that the employer's proffered reason for the discharge
was pretextual and that retaliation for the whistle blowing was
the real reason for the discharge." Blackburn, 179 F.3d at 92-
93.

A plaintiff cannot simply dispute or disagree with the
stated reason for termination.  Rather, he must produce evidence
demonstrating "such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a
reasonable factfinder could rationally find them unworthy of
credence." Zaffuto v. Wal-Mart Stores, Inc., 130 Fed. Appx. 566,
570 (3d Cir. 2005) (quoting Fuentes v. Perskie, 32 F.3d 759, 765
(3d Cir. 1994)); see also Blackburn, 179 F.3d at 94.  The burden
on the plaintiff is to demonstrate that the defendant's "stated
justifications for the firing were post hoc rationalizations."
Zaffuto, 130 Fed. Appx. at 571.

As explained at length in the Statement of Undisputed
Facts, ¶¶54-57, Penske has set forth its legitimate, non-
discriminatory reason for Mangini's discharge -- his violation
of a basic standard of conduct at Penske, "Refusal to Dispatch."

26

Penske established that its employment policies prohibit "Refusal to Dispatch" and provide that such conduct will result in discipline, up to and including termination.  Statement of Facts ¶ 52.  Penske also established that Mangini was repeatedly informed of this policy, and that other employees who have violated it have been terminated for such conduct. Id. at ¶¶51, 53.  The policy is necessary to ensure that Penske can perform its primary job function of dispatching its trucks in a timely, stable and predictable fashion, thereby meeting its customers' delivery needs and expectations. Id. at ¶53.  This termination was all the more warranted by the fact that Mangini had been subjected to repeated disciplinary warnings at Penske for his poor attendance, and had been issued a "final written warning" four months before his termination.  Id. at ¶6.

Thus, the burden shifts to Mangini to demonstrate that Penske's stated reason for his termination was a false and pretextual cover-up for unlawful retaliation.

Mangini cannot meet his burden of proving pretext.  He does not dispute that delivering customer product, as assigned, is an essential job requirement, and that Penske disciplined and terminated employees for this violation.  Mangini also cannot dispute the fact that he was instructed to load the truck and deliver the baked goods and food products, as every driver experienced every night, yet on this night he admits he

27

willfully refused.  Mangini Dep. at 146:18-147:2; 156:11-156:20;
158:23-159:24; 160:19-161:14; 192:1-192:10, Ex. 2.  As such, he
was insubordinate, violated Penske policy, and was terminated,
upon review and approval of Human Resources and upper
management.

Mangini's burden at this stage is not just to show that he
disagreed with the termination decision, or that it was, in his
opinion, unduly harsh or unfair because he expressed concerns
about "safety."  Rather, he must demonstrate - but cannot - that
Penske's stated reason contains "such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions" that a reasonable fact-finder "could rationally
find them unworthy of credence." Zaffuto, 130 Fed. Appx. at 570;
see also Blackburn, 179 F.3d at 94.

Plaintiff offers no evidence to meet this burden. Nothing
in the decision-making process is contradictory, inconsistent,
implausible or suggestive of pretext.  Plaintiff has not
presented a single witness, witness statement or document to
establish pretext, nor has he challenged the veracity of
Plaintiff's witnesses.[6]

Moreover, the record establishes the legitimacy of Penske's
termination reason through two independent sources, unaffiliated

---

[6] In contrast, Mangini has undermined his own credibility by
misrepresenting to Penske the reason for his on-the-job arrest
for drug distribution charges. Statement of Facts ¶7.

with Penske management.  First, as noted above, fellow drivers supported the decision, as reported in an unsolicited email to Penske, stating that Mangini "needs to be fired" because, "[i]f he is not fired then what you are saying is that either myself or anyone else whose trailer has a heavy load can refuse the trip and you know there are at least a half dozen guys that would pull that trick and you would have created a monster." Doughty e-mail of 9/27/10, Ex. 25.  This opinion expresses exactly the concerns that motivated Penske's policy and decision, demonstrating that it was not pretextual.

Second, the New Jersey Unemployment Compensation Board Appeal Tribunal issued a decision on October 11, 2011, affirming that Mangini had engaged in willful misconduct and insubordination by refusing to dispatch, thereby warranting Penske's legitimate business decision to terminate him. Unemployment Compensation Appeal Tribunal decision, Ex. 26; Statement of Facts ¶57.  Although the Hearing Examiner's decision is not binding on the Court, it is persuasive in establishing that another neutral fact-finder has reviewed Mangini's testimony and claims and found that not only was Mangini unable to establish pretext in Penske's proffered reason for termination, but that Mangini was the one who presented contradictory and pretextual reasons for his conduct.  His dissembling included his post-termination claim that he objected

to "strapping" concerns, while admitting that he never raised such concerns during his employment – and in fact the photographs of the load reveal that the product was secure and could be strapped.  Penske Photographs, Ex. 20; Plaintiff's Photographs, Ex. 29.  The Hearing Examiner stated, "[t]he claimant contended the short stacks of pretzels should have been strapped. . .[t]his contention is rejected, as the claimant did not mention strapping as a concern to the dispatcher or to the operations manager at the time of the incident.  The employer provided credible testimony that additional straps were plentiful and that the claimant could have strapped the pretzels."  Unemployment Compensation Appeal Tribunal decision, Ex. 26.

Thus, Mangini fails to satisfy his burden of demonstrating with competent evidence that Defendants' articulated reasons for termination were a pretext for illegal conduct, and his CEPA claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, defendant Penske Logistics respectfully requests that the Court grant summary judgment as to plaintiff's claim, pursuant to Fed. R. Civ. P. 56.

Respectfully Submitted,

**FLASTER/GREENBERG P.C.**

By:  /s/ Michael D. Homans
     Michael D. Homans (MH8447)
     Rachel E. Licausi (RK1470)
     FLASTER/GREENBERG P.C.
     1810 Chapel Avenue West
     Cherry Hill, New Jersey
     08002-4609
     Phone: (856) 661-2283
     Attorneys for Defendant

Dated:  December 9, 2011